UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CASE NO.: 4:23-cv-00115-RSB-CLR

VPR BRANDS, LP,

    Plaintiff/Crossclaim Defendant,

v.

VAPE LOFT ABERCORN, LLC et. al.

    Defendants/Counterclaim Plaintiffs.

---

VAPE LOFT ABERCORN, LLC, et. al.

    Third-Party Plaintiffs,

v.

IMIRACLE (HK) LIMITED AND ECTO WORLD, LLC,

    Third-Party Defendants.

---

IMIRACLE (HK) LIMITED

    Third-Party Crossclaim Plaintiff,

v.

VPR BRANDS, LP,

    Third-Party Crossclaim Defendant.

**PLAINTIFF/CROSSCLAIM DEFENDANT VPR BRANDS, LP'S RESPONSE IN OPPOSITION TO IMIRACLE (HK) LIMITED'S MOTION FOR PRELIMINARY INJUNCTION (ECF 41) AND MEMORANDUM OF LAW**

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 5

II. LEGAL STANDARDS .................................................................................................. 6

   A. Standard Applicable to Preliminary Injunctions ................................................. 6

   B. Standard Applicable to Common-Law Trademark Priority Claims.................... 6

III. ARGUMENT .................................................................................................................. 7

   A. iMiracle cannot prove it is likely to succeed on the merits because it does not own any right in and to the ELF Mark................................................................................... 7

      1. iMiracle Lacks Standing to Assert Rights to ELF that were owned by GD Sigelei and Allegedly Assigned Pursuant to an Illusory Assignment-in-Gross. ................................ 10

      2. The Purported Assignment of the Alleged "Elf" name from GD Sigelei to iMiracle Fails the Substantial Similarity Test for a Valid Assignment ........................................... 12

      3. iMiracle Acquired No Assets with the Purported Assignment of the alleged "Elf" name from GD Sigelei. ...................................................................................................... 12

      4. GD Sigelei's "Elf" atomizer product and iPV's "Elf squonking" Product Continue to be Sold in the U.S. and those Sales Benefit GD Sigelei and iPV, not iMiracle. .............. 13

      5. There is No Continuity of Management Between GD Sigelei and iMiracle.............. 13

      6. Even if this Court Considers the GD Sigelei Assignment to iMiracle as Valid, iMiracle Failed to Establish Senior Rights in its ELF Mark for ELFBAR........................ 14

      7. Even Assuming Senior Rights Were Created Based on the 2016 Introduction of GD Sigelei's "ELF" "sub-ohm tank" or "atomizer" Products, GD Sigelei's Rights Were Abandoned After Three Years of Continuous Non-Use................................................... 15

      8. iMiracle Cannot Tack GD Sigelei's Alleged Rights on to the Rights, if any, Belonging to the iPV Squonking Product. ........................................................................ 16

   B. iMiracle Will Not Suffer Irreparable Harm Absent an Injunction. ............................ 17

   C. VPR Would Suffer Substantially More Harm Than it Already Has by an Injunction than iMiracle Would Be Harmed. ......................................................................... 18

   D. The Public Interest Does Not Favor an Injunction on These Facts. ........................... 19

IV. CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven, Inc. v. Kapoor Bros. Inc.*,
   977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013) ....................................................................... 18

*Comm. for Idaho's High Desert v. Yost*,
   92 F.3d 814, 820-21 (9th Cir. 1996) ...................................................................................... 5

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*,
   304 F.3d 1167, 1173 (11th Cir. 2002) ............................................................................. 14, 15

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
   508 F.3d 641, 647 (11th Cir. 2007) ........................................................................................ 8

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*,
   263 F.3d 1297, 1304 (11th Cir. 2001) .................................................................................. 18

*Ferrellgas Partners, L.P. v. Barrow*,
   143 F. App'x 180, 189 n.9 (11th Cir. 2005) .......................................................................... 10

*Hana Fin., Inc. v. Hana Bank*,
   574 U.S. 418, 422-23 (2015) ................................................................................................ 16

*Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*,
   303 F.3d 1242, 1246 (11th Cir. 2002) .................................................................................. 10

*John H. Harland Co. v. Clarke Checks, Inc.*,
   711 F.2d 966, 976 (11th Cir. 1983) ................................................................................. 8, 14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
   51 F.3d 982, 985 (11th Cir. 1995) .......................................................................................... 5

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,
   106 F.3d 355, 360 (11th Cir. 1997) ........................................................................................ 9

*Nutra Health v. Hd Holdings Atlanta*,
   2021 U.S. Dist. LEXIS 212160, *31-32 (N.D. Ga 2021) ........................................... 5, 7, 9, 14

*Park 'n Fly v. Dollar Park & Fly*,
   469 U.S. 189, 198 (1985) ....................................................................................................... 8

*Planetary Motion, Inc. v. Techsplosion, Inc.*,

*261 F.3d 1188, 1195 (11th Cir. 2001)* .................................................................................. 6, 13

*Powers v. Ohio*,
   499 U.S. 400, 410 (1991) ................................................................................................... 10

*Schmidt v. Versacomp, Inc.*,
   No. 08-60084-CIV, 2011 WL 13172509, at *5 (S.D. Fla. Feb. 17, 2011) .............................. 11

*Singleton v. Wulff*,
   428 U.S. 106, 115-116 (1976) ............................................................................................ 10

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*,
   293 F. Supp. 3d 1334, 1366 (M.D. Fla. 2017) ...................................................................... 13

*SunAmerica Corp. v. Sun Life Assur. Co. of Canada*,
   77 F.3d 1325, 1334 (11th Cir. 1996) ..................................................................................... 9

*Tally-Ho, Inc. v. Coast Cmty. College Dist.*,
   889 F.2d 1018, 1023 (11th Cir. 1989) ......................................................................... 5, 7, 13

*Tana v. Dantanna's,*
   611 F.3d 767, 773 (11th Cir. 2010) ....................................................................................... 8

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763, 768 (1992) ...................................................................................................... 9

*Uber Promotions, Inc. v. Uber Techs., Inc.*,
   162 F. Supp. 3d 1253, 1281 (N.D. Fla. 2016) ...................................................................... 19

*Vital Pharm., Inc. v. Monster Energy Co.*,
   472 F. Supp. 3d 1237, 1262 (S.D. Fla. 2020) ........................................................... 10, 11, 12

**Statutes**

15 U.S.C. § 1060(a)(1) .............................................................................................................. 10
15 U.S.C. § 1127 ........................................................................................................... 8, 14, 15

**Other Authorities**

S. Rep. No. 100-515 ................................................................................................................... 9

**Treatises**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:1 (4th ed. 2001) 14

## I.   INTRODUCTION

This motion for preliminary injunction is iMiracle's attempt to re-litigate claims it first asserted in the pending litigation, *VPR Brands, LP v. Shenzhen Weiboli Technology Company Limited, et. al.*, filed in the Southern District of Florida, Case No. 9:22-cv-81576 ("Weiboli Case"). iMiracle filed identical claims and an almost identical motion for preliminary injunction in the Weiboli case. However, Judge Cannon stayed that case pending the Weiboli defendants' appeal of the Preliminary Injunction Order successfully obtained by VPR, and denied iMiracle's pending motion for preliminary injunction without prejudice. Now after being third-partied into this case, iMiracle seeks a different result, in a different court.  The court should deny this motion, and dismiss iMiracle's claims against VPR as duplicate if the claims and motions already raised by iMiracle in the earlier filed Weiboli Case.

Let's set the story straight. iMiracle does not have any rights in and to the ELF Mark. In an attempt to circumvent these facts after the preliminary injunction was issued in the Weiboli case, it attempted to manufacture "prior rights" to the ELF Mark by a purported assignment of GD Sigelei's unregistered "elf" name to iMiracle. Third party GD Sigelei's supplier and longtime business partner of Ecto World, LLC dba Demand Vape (another third-party defendant in this case), is also a party to the Weiboli Case.  Demand Vape aggressively defended against VPR's preliminary injunction motion in the Weiboli Case, including appearing to testify at the hearing.  Despite asserting potential losses in tens of millions of dollars, Demand Vape never mentioned or raised any evidence regarding its alleged sales of GD Sigelei's "elf" products.  Did it forget that its entire ELF BAR business, worth hundreds of millions of dollars, hung in the balance and that there was such important evidence to support its defense?

The easiest way for this Court to deal with this frivolous, meritless and wasteful motion is to deny it without prejudice, and dismiss this case altogether, for the reasons outlined in VPR's motion to dismiss (ECF 56).

## II.   LEGAL STANDARDS

### A. Standard Applicable to Preliminary Injunctions

To successfully obtain a preliminary injunction, plaintiff must establish, "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citation omitted).

### B. Standard Applicable to Common-Law Trademark Priority Claims

Ownership of a distinctive mark is subject to priority based on use; the first to use a mark on a product or service in a particular geographic market—the senior user—acquires rights in the mark in that market. *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989). "In establishing prior use, the defendant has essentially the same burden as the plaintiff: to prove that its competing use of the contested mark pre-dates the competitor's use. In other words, a defendant's prior use defense also requires a showing of competition." *Id.* at 1025. Generally, "a defendant cannot defeat an infringement claim by showing that a third party had rights to the mark that are senior to the plaintiff's rights." *Nutra Health v. Hd Holdings Atlanta*, 2021 U.S. Dist. LEXIS 212160, *31-32 (N.D. Ga 2021) (citing *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 820-21 (9th Cir. 1996) ("[A] third party's prior use of a trademark is not a defense in an infringement action").

## III.   ARGUMENT

### A. iMiracle cannot prove it is likely to succeed on the merits because it does not own any right in and to the ELF Mark.

iMiracle's motion for preliminary injunction is premised on its unsupported assertions that iMiracle is the real owner of the ELF trademark. iMiracle's assertions are contrary to the facts and frivolous. iMiracle has no claim to priority for the ELF trademark.

The Eleventh Circuit uses a two-part test to determine whether a party has established ownership of a mark through prior use. *First*, the party must show adoption of the mark. *Second*, the party must show use of the mark in a way that identifies or distinguishes the marked goods as the producer's goods to the consuming public. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001).

iMiracle claims "[s]tarting in approximately April 2022, Imiracle began selling ELFBAR-branded disposable electronic cigarette products to U.S.-based disributors." (ECF 41 at 6). iMiracle has no basis to assert priority in the ELF brand based on its own sales. Instead, iMiracle is asserting rights based on a legal fiction it created in March, 2023, after Judge Cannon granted VPR's preliminary injunction in the Weiboli case.

iMiracle bases its ownership claim and senior status to the ELFBAR brand on an assignment and an amendment to the assignment from GD Sigelei Electronic Tech Co. Ltd. ("GD Sigelei") dated in March of 2023—after the preliminary injunction was entered against defendants—purportedly assigning GD Sigelei's ELF mark to iMiracle. iMiracle claims the assignment from GD Sigelei conveyed "all of GD Sigelei's right, title and interest in and to GD Sigelei's ELF Marks, together with the goodwill of the business in which GD Sigelei's ELF Marks are used and which is symbolized by the GD Sigelei's ELF Marks, along with the right to recover for damages and profits for past infringement thereof, and to stand fully and entirely in

place of GD Sigelei in all matters related to GD Sigelei's ELF Marks." (iMiracle's Exhibit D, ECF 41-5 at 23).

ELFBAR and GD Sigelei's ELF name were never registered in the United States. iMiracle's claim of priority rights rests entirely on common law trademark rights. "Under common law principles, the senior user of a mark cannot monopolize markets that neither his trade nor his reputation has reached." *Tally-Ho*, 889 F.2d at 1027-1028. The alleged use of the "Elf" name by GD Sigelei for an e-cigarette accessory product did not reach the market or consumers of VPR's ELF-branded e-cigarette products. *Id.* at 1023 ("In establishing prior use, the defendant has essentially the same burden as the plaintiff: to prove that its competing use of the contested mark pre-dates the competitor's use. In other words, a defendant's prior use defense also requires a showing of competition.").

GD Sigelei's brief sale in 2016-2017 of "sub-ohm tank" or "atomizer" and Elf Tank and Coil products using the designator "elf" did not establish any senior rights in the unregistered elf name. (Exhibit 1, Glauser's Depo. Tr. at 92). The facts show that GD Sigelei's "sub-ohm tank" or "atomizer" ELF Tank products and ELF Coil products were not marketed under the ELF name, they were marketed under the SIGELEI brand name. The use of the designator "elf" or "elf tank" was descriptive. The "elf" was descriptive of a small atomizer accessory, not a trademark. Furthermore, "elf" was used beneath the dominant designator SIGELEI, a registered trademark that appears prominently on all GD Sigelei's products. ELF was never used by GD Sigelei "in a way that identifies or distinguishes the marked goods as the producer's goods to" electronic cigarette consumers. *Nutra Health*, 2021 U.S. Dist. LEXIS 212160, *29.

"Elf Tank" and "Elf Coil" are accessories, not e-cigarettes. That is apparent in the use of "elf" in conjunction with SIGELEI branded J150 and J80 e-cigarette products. The "elf"

designator is there for the included accessory, not the product itself. The J150 and J80 were SIGELEI e-cigarette brands, not ELF brand. (Junbiao Decl., ECF 41-5 at 7)

GD Sigelei did not use the "Elf" name in association with electronic cigarettes or in any way that would compete with or cause confusion with VPR's ELF-branded electronic cigarettes. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) ("The greater the similarity between the products and services, the greater the likelihood of confusion.")

Even though in the Weiboli Case, Judge Cannon already determined that VPR's registered ELF mark is entitled to trademark protection, issued a preliminary injunction enjoining the Weiboli defendants, and thereafter denied another defendant's motion to vacate the preliminary injunction based upon the same unfounded allegations of senior status for the unregistered "ELF" mark asserted by GD Sigelei, iMiracle now comes to this Court with the same conclusory and vague assertions of nonspecific violations of iMiracle's purported trademark rights.

The fallacy here is that iMiracle has trademark rights at all in the ELF name in the United States. It does not. A key purpose of the Lanham Act is to protect the interests of those with a protectable interest in a mark. *See* 15 U.S.C. § 1127; *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 198 (1985). iMiracle has no protectable interest in the ELF mark.

In order to prevail under a § 43(a) claim, the *trademark holder* must prove, inter alia, that it *possesses a mark. Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007) (To make out a *prima facie* case under § 43(a) requires the plaintiff to show "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two."); *Tana v. Dantanna's,* 611 F.3d 767, 773 (11th Cir. 2010) ("To establish a prima facie case of trademark

infringement under § 43(a), a plaintiff must show '(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'"); *SunAmerica Corp. v. Sun Life Assur. Co. of Canada,* 77 F.3d 1325, 1334 (11th Cir. 1996) ("To establish a prima facie case in an ordinary trademark infringement suit, a claimant need only demonstrate that: (1) it enjoys enforceable rights in its mark, and (2) the alleged infringer adopted a mark that is the same or confusingly similar.").

There is no wiggle room – the Eleventh Circuit requires a protectable trademark to maintain trademark claim of the Lanham Act. But iMiracle lacks a protectible trademark. iMiracle does not possess a protectable interest in the ELF mark. Section 43(a) of the Lanham Act protects "qualifying" unregistered trademarks. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992); S. Rep. No. 100-515, at 40 (1988) (explaining that the aim of the 1988 amendments to the Act was to extend the protections given to registered marks under Section 43(a) to unregistered marks). iMiracle lacks a "qualifying" mark. It has nothing. It gets nothing and its further attempts to make something from nothing are wasted effort directed at running up VPR's attorneys' fees and costs and wasting this Court's time.

> 1. ***iMiracle Lacks Standing to Assert Rights to ELF that were owned by GD Sigelei and Allegedly Assigned Pursuant to an Illusory Assignment-in-Gross.***

As notice, iMiracle needs to establish it has rights in ELF or ELFBAR that are superior to that of VPR to prevail. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc*., 106 F.3d 355, 360 (11th Cir. 1997); *Nutra Health*, 2021 U.S. Dist. LEXIS 212160, *31 ("[A] defendant cannot defeat an infringement claim by showing that a third party had rights to the mark that are senior to the plaintiff's rights"). But iMiracle had no ownership rights in the different versions of

the "elf" designations belonging to GD Sigelei. GD Sigelei is a third party to this case.

To have standing, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). There are only two exceptions applicable to this rule: (1) where there is privity and a relationship between the litigant are third party are such that their rights are "inextricably bound" by their relationship; and (2) where the third party is unable to assert its own right. *Singleton v. Wulff*, 428 U.S. 106, 115-116 (1976). Neither exception applies here.

So instead, after Judge Cannon entered a preliminary injunction against Weiboli in the Weiboli case, iMiracle hastily engineered a purported assignment of GD Sigelei's alleged rights to the "Elf" name to iMiracle. (ECF 41-5). Apparently, iMiracle botched the assignment the first time and so an amendment was needed. (Compare Exhibit D, ECF 41-5 at 22-29 with Exhibit E, ECF 41-5 at 41-46).

However, in order "to transfer a trademark—and its priority—successfully, the purchase and sale of the mark must be *valid*." *Vital Pharm., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 1237, 1262 (S.D. Fla. 2020) (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (emphasis in original). The assignment iMiracle relies upon is an invalid assignment-in-gross.[1] *See* 15 U.S.C. § 1060(a)(1) ("A registered mark . . . shall be assignable with the good will of the business in which the mark is used . . . ."). "[I]t is well-settled law that the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights." *Int'l Cosmetics*, 303 F.3d at 1246; see also *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 189 n.9 (11th Cir. 2005) (holding that a transfer of a trademark without the associated goodwill

---

[1] The assignment expressly applies U.S. Trademark law. (ECF 41-5 at 22).

was "an invalid transfer 'in gross'").

### 2. The Purported Assignment of the Alleged "Elf" name from GD Sigelei to iMiracle Fails the Substantial Similarity Test for a Valid Assignment

"To determine whether a trademark was assigned with the goodwill the mark has come to represent, courts look (primarily) to whether the assignee is using the mark for a 'substantially similar' product." *Vital Pharm.*, 472 F. Supp. 3d at 1263. iMiracle is not selling a substantially similar product to the one previously sold (and abandoned) by GD Sigelei. From 2016 to 2017, GD Sigelei sold a "sub-ohm tank" or "atomizer" product using the designator "elf" as descriptive of a small atomizer accessory. (Exhibit 1, Glauser Depo Tr., ECF 115-1 at 69). Starting in 2022, iMiracle began selling ELF BAR, a disposable nicotine e-cigarette vaporizer. The two products are different.

The *differences* here are the same differences as in the *Vital Pharm* case. There, the assignment of Dash's REIGN powdered dietary supplement product was found to be an invalid assignment-in-gross when transferred to Vital Pharmaceuticals to cover the REIGN ready-to-drink beverage product. See *Vital Pharm.*, 472 F. Supp. 3d at 1264 (determining assignment-in-gross where the products Dash and VPX sold under the REIGN mark were not substantially similar, that VPX entirely abandoned the product Dash had sold, and therefore "VPX has left behind *any* goodwill Dash had earned for its mark.").

### 3. iMiracle Acquired No Assets with the Purported Assignment of the alleged "Elf" name from GD Sigelei.

"Courts allow trademarks to be assigned only if the goodwill associated with the trademark is sold as well." *Schmidt v. Versacomp, Inc.,* No. 08-60084-CIV, 2011 WL 13172509, at *5 (S.D. Fla. Feb. 17, 2011). Here, iMiracle acquired no assets from GD Sigelei with the purported assignment. The document mentions no assets other than the "Elf" name as a

trademark and documents associated with that name purporting to show prior use. (ECF 41-5 at 22-28, 31-34). No business associated with the "Elf name" was transferred. In fact, it appears that the amendment was executed in order to make it clear that the business of selling ELF TANK disposable e-cigarettes in the U.S. belonging to GD Sigelei was not being transferred since a license back for that business from iMiracle to GD Sigelei was included in the amendment. (ECF 41-5 at 32).

The purported assignment does refer to a transfer by GD Sigelei of the "goodwill of the business," that bare recital in insufficient to demonstrate a necessary transfer of assets. See *Vital Pharm.,* 472 F. Supp. 3d at 1265 n.13 ("While the Agreement does say that VPX would receive "any goodwill associated" with the REIGN mark, courts have universally recognized that "a trademark assignment does not transfer goodwill merely because it formally recites that the goodwill is transferred.") citing *Schmidt*, 2011 WL 13172509, at *5 ("a trademark assignment does not transfer goodwill merely because it formally recites that the goodwill is transferred.").

> 4. **GD Sigelei's "Elf" atomizer product and iPV's "Elf squonking" Product Continue to be Sold in the U.S. and those Sales Benefit GD Sigelei and iPV, not iMiracle.**

"When a trademark assignor continues to sell its original product, it likely has not transferred the goodwill associated with its prior mark." *Vital Pharm.,* 472 F. Supp. 3d at 1268. No transfers of assets, businesses, inventory, or products are included in the assignment. Furthermore, the declarations of distributors D&A and Ecto World show that the GD Sigelei and iPV products called "Elf" continue to be sold. (Exhibit 2, Affidavit of Matthew Jonathan Glauser; Exhibit 3, Affidavit of Robert Ali). The same thing happened in *Vital Pharm*. This is another factor demonstrating that the purported assignment was illusory.

> 5. **There is No Continuity of Management Between GD Sigelei and iMiracle.**

"Courts also look to whether there is a "continuity of management" between the assignor and the assignee such that "the assignee will continue to provide the same quality service." *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1366 (M.D. Fla. 2017). GD Sigelei and iMiracle remain separate companies. (See ECF 41-5 referring to the relationship of the parties as separate entities). There is no continuity of management here, just like there was none in *Vital Pharm*. One more factor demonstrating assignment-in-gross.

### 6. Even if this Court Considers the GD Sigelei Assignment to iMiracle as Valid, iMiracle Failed to Establish Senior Rights in its ELF Mark for ELFBAR

The Eleventh Circuit uses a two-part test to determine whether a party has established ownership of a mark through prior use. *First*, the party must show adoption of the mark. *Second*, the party must show use of the mark in a way that identifies or distinguishes the marked goods as the producer's goods to the consuming public. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001). "Under common law principles, the senior user of a mark cannot monopolize markets that neither his trade nor his reputation has reached." *Tally-Ho*, 889 F.2d at 1027-1028.

The alleged "Elf" "sub-ohm tank" or "atomizer" product never reached the market or consumers of VPR's ELF-branded e-cigarette products. *Id.* at 1023 ("In establishing prior use, the defendant has essentially the same burden as the plaintiff: to prove that its competing use of the contested mark pre-dates the competitor's use. In other words, a defendant's prior use defense also requires a showing of competition."). GD Sigelei's brief sale in 2016-2017 of the "Elf" "sub-ohm tank" or "atomizer" product did not establish any senior rights in the mark. GD Sigelei's "Elf" "sub-ohm tank" or "atomizer" products were not marketed under the ELF name, they were marketed under the SIGELEI brand name. The use of the designator "elf" or "elf tank"

was descriptive. The "elf" was descriptive of a small atomizer accessory, not a trademark. Furthermore, "elf" was used beneath the dominant designator SIGELEI, a registered trademark that appears prominently on all GD Sigelei's products. ELF was never used by GD Sigelei "in a way that identifies or distinguishes the marked goods as the producer's goods to" electronic cigarette consumers. *Nutra Health*, 2021 U.S. Dist. LEXIS 212160, *29.

Furthermore, the "Elf" "sub-ohm tank" or "atomizer" products are accessories, not e-cigarettes. That is apparent in the use of "elf" in conjunction with SIGELEI branded J150 and J80 e-cigarette products. The "elf" designator is there for the included accessory, not the product itself. The J150 and J80 were SIGELEI brand, not ELF brand. (Junbiao Decl., ECF 41-5 at 7). GD Sigelei did not use the "Elf" name in association with electronic cigarettes or in any way that would compete with or cause confusion with VPR's ELF-branded electronic cigarettes. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) ("The greater the similarity between the products and services, the greater the likelihood of confusion.").

> 7. ***Even Assuming Senior Rights Were Created Based on the 2016 Introduction of GD Sigelei's "ELF" "sub-ohm tank" or "atomizer" Products, GD Sigelei's Rights Were Abandoned After Three Years of Continuous Non-Use.***

A trademark is deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127; *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) ("[A] defendant who successfully shows that a [] plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff."). "If a mark holder stops using a mark with an intent not to resume its use, the mark is deemed abandoned and 'falls into the public domain and is free for all to use... . Abandonment paves the way for future possession and property in any other person.'" *Id*. (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:1 (4th ed. 2001)).  A period of "nonuse

for 3 consecutive years shall be prima facie evidence of abandonment not." 15 U.S.C. § 1127.

GD Sigelei abandoned any claim to ELF associated with its products in the United States when it stopped selling them in 2017. Glauser admitted he cannot demonstrate sales after 2017 by Demand Vape, and no other evidence of sales in the U.S. has been shown. The nonuse of ELF continued after 2017 for more than three years. Consequently, pursuant to § 1127, GD Sigelei's rights were abandoned. GD Sigelei cannot establish the "continuous use" of the Elf name in commerce necessary to establish priority, and its priority claim must fail. *Cumulus Media*, 304 F.3d at 1173 ("Abandonment is trademark law's way of recognizing that trademark rights flow from use.").

GD Sigelei confirmed its abandonment when it applied to register ELF TANK with the USPTO in November 2022, as an "intent to use" application under section 1(b). (Exhibit 4, ELF TANK Trademark Application). GD Sigelei, by filing under section 1(b) admitted that as of its filing date, November 2, 2022, it had yet to use the ELF TANK name in interstate commerce. If GD Sigelei was able to establish prior rights that had not been abandoned it would have disclosed its earliest use in commerce of the mark, but it did not. GD Sigelei also did not attempt to register ELF TANK by claiming prior foreign rights to the ELF TANK mark that it appears to have had in the past as shown in the Chinese certificate for the ELF TANK trademark from 2016 attached to Mr. Ou's declaration. (ECF 41-5 at 17). But GD Sigelei did not do that either indicating that it knew it abandoned any rights it had to ELF worldwide more than three years before it applied for ELF TANK.

> 8.  *iMiracle Cannot Tack GD Sigelei's Alleged Rights on to the Rights, if any, Belonging to the iPV Squonking Product.*

The counterclaim fails to mention it, but defendant Ecto World previously claimed that the "Elf" name as used by GD Sigelei was followed by the use of "Elf" in connection with a

product introduced in 2019 called iPV Elf ADA. That was a "squonking" product. That product was not an electronic cigarette, it was an accessory, and it never belonged to GD Sigelei, and so never could be assigned by GD Sigelei to iMiracle. Sales of a different product made by a different entity that is not in privity with iMiracle are irrelevant and cannot establish use in commerce. Furthermore, based upon the evidence presented to this Court by iMiracle, any rights in the "Elf" mark associated with the "squonking" product were abandoned. (ECF 41-5 at 11, Junbiao Decl., ¶ 24 (sales chart showing only one 2019 sales entry for the IPV® Elf ADA)). Therefore, any rights to the use of "Elf" by iMiracle are implausible and cannot support the counterclaims.

Tacking occurs when an original mark is revised but both marks are considered "legal equivalents" that "create the same, continuing commercial impression" so that consumers "consider both as the same mark." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 422-23 (2015) (internal quotations omitted). Tacking does not apply here. For tacking to apply, the commercial impression of both marks to the product consumer must be the same. *Id*. There are no allegations that iMiracle can plausibly make to show tacking. The "ELF" "sub-ohm tank" or "atomizer" products and the iPV "Elf" squonking products were from different makers used for different purposes by different consumers.

Based on the foregoing reasons, iMiracle is unlikely to succeed on the merits of its trademark infringement claim.

### B. iMiracle Will Not Suffer Irreparable Harm Absent an Injunction.

There is no threat of irreparable harm to iMiracle absent an injunction because iMiracle has no rights in and to the ELF Mark. iMiracle is the infringer in this case. iMiracle claims that after the preliminary injunction order, "it suspended sales of its ELFBAR-branded electronic

cigarettes to U.S. customers" and "re-branded it[s] products as 'EB Design' until such time as the Florida district court vacates the preliminary injunction or dismisses VPR's claims." (ECF 41 at 8). Any harm that iMiracle is complaining about due to the loss of sales of its ELFBAR branded products is a result of the Court's Preliminary Injunction Order enjoining sales of the ELFBAR products, not the result of VPR's sales of its authorized ELF products. Furthermore, VPR posted a bond in the amount of $500,000 as security in the event that there is any finding that there was a wrongful enjoinment.

VPR was always entitled to continue conducting its business using the ELF Mark, which includes expanding ELF branded products. "Bar" is a descriptive term commonly used for e-cigarettes of a similar shape and style. (See, e.g., Exhibit 6, Excerpts of Ecto World LLC dba Demand Vape's Website, showing similar products marketed under a variety of "bar" names, such as "Geek Bar," "Luff Bar," "Biff Bar" and "Novo Bar.")**.** iMiracle complains about the appearance of the ELF VPR 7000 Ultra and ELFBAR BP 5000 products' shape, coloring, and style of Imiracle's ELFBAR[.]" (ECF 41 at 9-10). Although this sounds like it is asserting a trade dress claim, iMiracle does not expressly do so, nor can iMiracle possibly establish such trade dress rights. iMiracle does not own any trade dress rights in and to the generic bar shape of the electronic cigarette. Moreover, in this industry, the bar shape is "probably the most common size and shape that's available and the most popular size and shape available in the industry today." (Exhibit 5, Excerpts of Transcript of Weiboli Case Preliminary Injunction Hearing at 89-90; see e.g., Exhibit 6, Excerpts of Ecto World LLC dba Demand Vape's Website).

### C. VPR Would Suffer Substantially More Harm Than it Already Has by an Injunction than iMiracle Would Be Harmed.

The balance of harms weighs against issuing an injunction. In deciding this factor, the Court must decide whether the weight of Plaintiff's financial harm and nonmonetary harm to its goodwill and reputation outweighs Defendants' losses arising from their inability to use Plaintiff's mark until a decision on the merits is reached. *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013) (citing *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001)).

VPR has already established in the Weiboli case that the Weiboli defendants' use of the ELFBAR mark has resulted in a loss of trade for their ELF products. As argued in many motions in this case, the court in which the claims were first-filed should be the court to determine the merits of those claims. To issue an injunction in this case would undo Judge Cannon's Preliminary Injunction Order in effect and pending on appeal in front of the Federal Circuit. This makes no sense at all. VPR is and was always the rightful owner of the ELF Mark. VPR is a small business as compared to iMiracle and its master distributors who makes hundreds of millions of dollars a year. VPR's small business has much more to lose if an injunction were issued as compared to its much larger competitors.

### D.  The Public Interest Does Not Favor an Injunction on These Facts.

The public interest does not weigh in favor of issuing a preliminary injunction enjoining VPR's marketing and sale of its ELF products. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE*, S.A.., 263 F.3d at 1304. Factors to be considered in the trademark infringement context are "the public's interest in not being confused; the public's interest in encouraging, not stifling, competition; and the broader economic implications of [the] grant of the preliminary injunction." *Uber Promotions, Inc. v. Uber Techs*.,

Inc., 162 F. Supp. 3d 1253, 1281 (N.D. Fla. 2016) (alteration in original) (internal citations and quotation marks omitted).

The consumer confusion in the marketplace here was caused by iMiracle's launch of ELFBAR products into the United States, not by VPR. VPR was always the senior user and had exclusive rights in the ELF Mark. Now that iMiracle has been preliminary enjoined from selling its own infringing ELFBAR products, it seeks to reach a different result with this Court. There is no good in issuing an injunction in this case that would be inconsistent with another Court's rulings.

## IV.   CONCLUSION

For these reasons, iMiracle's motion for preliminary injunction must be denied.

DATED: August 25, 2023                           Respectfully submitted,

/s/  Joel B. Rothman
JOEL B. ROTHMAN
Georgia Bar Number:  979716
joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL  33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff/Counterclaim Defendant VPR Brands, LP*